IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| **CARL ROBERTS, #N-23733** <br> a/k/a Karl Roberts, <br><br>    **Plaintiff,** <br><br> vs. <br><br> **B. NEAL,** *et al.*, <br><br>    **Defendants.** | ) <br> ) <br> ) <br> ) <br> )   **CIVIL NO. 11-cv-266-JPG** <br> ) <br> ) <br> ) <br> ) <br> ) |

**MEMORANDUM AND ORDER**

**GILBERT  District Judge:**

  Plaintiff, an inmate in the Pinckneyville Correctional Center, was at times relevant to this action also housed at the Big Muddy River Correctional Center.  Plaintiff brings this action for deprivations of his constitutional rights pursuant to 42 U.S.C. § 1983. This case is now before the Court for a preliminary review of the complaint pursuant to 28 U.S.C. § 1915A, which provides, in pertinent part:

> (a) **Screening.**– The court shall review, before docketing, if feasible or, in any event, as soon as practicable after docketing, a complaint in a civil action in which a prisoner seeks redress from a governmental entity or officer or employee of a governmental entity.
> (b) **Grounds for Dismissal.**– On review, the court shall identify cognizable claims or dismiss the complaint, or any portion of the complaint, if the complaint–
>> (1) is frivolous, malicious, or fails to state a claim on which relief may be granted; or
>> (2) seeks monetary relief from a defendant who is immune from such relief.

28 U.S.C. § 1915A.

An action or claim is frivolous if "it lacks an arguable basis either in law or in fact." *Neitzke v. Williams*, 490 U.S. 319, 325 (1989). An action fails to state a claim upon which relief can be granted if it does not plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007). Upon careful review of the complaint and any supporting exhibits, the Court finds that some of the claims in this complaint are subject to dismissal.

**Facts:**

The following version of the facts of this case is gleaned from Plaintiff's amended complaint (Doc. 11). On March 31, 2009, while housed at the Big Muddy Correctional Center, Plaintiff injured his hand and face. Plaintiff was taken to the health care unit, where he was seen by Defendant Neal. Defendant Neal performed an assessment of the wounds, but did not require that Plaintiff be uncuffed during the examination. Defendant Neal issued anti-bacterial cream for a cut on Plaintiff's face, but did not provide Plaintiff with pain medication. Plaintiff was then returned to his cell.

Once in his segregation cell, Plaintiff's hand became swollen, and he notified Defendant Shelby of his need for care. Defendant Shelby told Plaintiff to stop whining, and then walked away without getting Plaintiff any medical attention. Plaintiff then informed Defendant Woodside that he needed care, but this Defendant also walked away without summoning help. Plaintiff's roommate began yelling for help, and Defendant Doty responded that the medical unit had been contacted. However, no one came to the cell during that shift.

Eventually Defendant Puckettt, a nurse making rounds, came by Plaintiff's cell. Defendant Puckett gave Plaintiff Ibuprofen pain reliever, though Plaintiff informed the nurse that he was told previously by a doctor not to take this medication. Defendant Puckett stated that she did not have an alternative to give Plaintiff, and left Plaintiff with the Ibuprofen.

Plaintiff filed an emergency sick-call request. Two days later he was called to the health care unit. The nurse who examined him (who is not a party to this action) ordered x-rays for Plaintiff's hand, and it was determined that there was a break. A doctor (also not a party), treated Plaintiff for the break.

Once he was returned to his cell, Plaintiff filed grievances with Defendant C. Miller and Defendant Schuler, claiming that the earlier-named Defendants had failed to insure that Plaintiff received the medical treatment that he needed. Defendant C. Miller failed to respond to the grievance, and Defendant Schuler responded that Plaintiff needed to raise the issue with the health care unit.

On April 7, 2009, Plaintiff was seen by an outside doctor for the injury to his hand. This doctor prescribed pain medication. The next day, when Plaintiff requested the medication, Defendant Issacs provided Plaintiff with Tylenol, instead of the pain medication that had been prescribed. The Tylenol did little to alleviate Plaintiff's pain. Plaintiff filed multiple requests to Defendant Issacs for the prescribed medication, but he consistently received only Tylenol. Plaintiff also requested clean dressing for the splint on his hand, but Defendant Issacs ignored this request. Plaintiff then filed a request for intervention with Defendant Evans, who ignored the request. Plaintiff filed many requests for status updates with Defendants C. Miller and Evans, but these requests went unanswered.

On April 30, 2009, Plaintiff returned to the outside doctor for a followup, where his bandage was removed and he received a brace. The doctor once again prescribed pain medication. On May 1, when Plaintiff went to retrieve this medication, Defendant Issacs once again provided Plaintiff with Tylenol, instead of the medication which was prescribed. Plaintiff then filed a complaint with

Defendant J. Miller,[1] but received no reply.

On May 18, 2009, Plaintiff was transferred to Pinckneyville Correctional Center, where he informed Defendant Alvis that a doctor at Big Muddy River Correctional Center had authorized a low-bunk permit for Plaintiff's medical needs. Defendant Alvis denied Plaintiff's request for a similar permit for use at Pinckneyville. Plaintiff was later seen by Defendant Knope for medical screening, and Plaintiff informed this Defendant as well that he had a low-bunk permit while at Big Muddy, and that he had also received pain medication while there. Defendant Knope denied Plaintiff's request for a Pinckneyville low-bunk permit and pain medication, stating that no requirements for these therapies were listed in his medical files. Plaintiff learned later that Defendant Davis, the transfer nurse at Big Muddy, had failed to correctly note Plaintiff's needs in his medical files, which caused Defendant Knope to deny the requests.

On May 21, 2009, Plaintiff was seen by Defendant Obadina for followup care. Plaintiff was provided pain medication on May 26, 2009. After further examination, Defendant Obadina filed a medical referral denial form on June 1, indicating that Plaintiff had denied referral care to an outside doctor, though Plaintiff had made no such request. Defendant Obadina thereafter cancelled Plaintiff's followup care with the outside doctor, and treated Plaintiff himself. The next day, Plaintiff was provided a low-bunk permit.

Plaintiff filed grievances concerning these acts with Defendant J. Miller, and later sent status requests after he received no response. On July 24, 2009, Defendant J. Miller denied one of Plaintiff's grievances. Plaintiff appealed this decision to Defendant Randle on September 8, 2009, but received no response.

---

[1] Defendant J. Miller is a different person than Defendant C. Miller.

In July 2009, Plaintiff was again seen by Defendant Obadina, who determined that Plaintiff's hand was healing, even though Plaintiff was experiencing difficulty with use. Defendant Obadina scheduled Plaintiff for physical therapy. After three sessions, Plaintiff's therapy ceased, and Plaintiff was not called for followup care after this point.

**Discussion:**

To facilitate the orderly management of future proceedings in this case, and in accordance with the objectives of FED. R. CIV. P. 8(e) and 10(b), the Court finds it appropriate to break the claims in Plaintiff's *pro se* complaint and other pleadings into numbered counts, as shown below. The parties and the Court will use these designations in all future pleadings and orders, unless otherwise directed by a judicial officer of this Court. The designation of these counts does not constitute an opinion as to their merit.

**COUNT 1:    Medical Indifference**

The Supreme Court has recognized that "deliberate indifference to serious medical needs of prisoners" may constitute cruel and unusual punishment under the Eighth Amendment. *Estelle v. Gamble*, 429 U.S. 97, 104 (1976); *Farmer v. Brennan*, 511 U.S. 825 (1994); *see Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (per curiam). This encompasses a broader range of conduct than intentional denial of necessary medical treatment, but it stops short of "negligen[ce] in diagnosing or treating a medical condition." *Estelle,* 429 U.S. at 106. *See also Sanville v. McCaughtry,* 266 F.3d 724, 734 (7th Cir. 2001).

> To prevail on an Eighth Amendment claim, a plaintiff must show that the responsible prison officials were deliberately indifferent to his serious medical needs. *See Farmer v. Brennan*, 511 U.S. 825, 837 (1994); *Dunigan ex rel. Nyman v. Winnebago Cnty.*, 165 F.3d 587, 590 (7th Cir. 1999). Deliberate indifference involves a two-part test. The plaintiff must show that (1) the medical condition was objectively serious,

and (2) the state officials acted with deliberate indifference to his medical needs, which is a subjective standard.

*Sherrod v. Lingle*, 223 F.3d 605, 619 (7th Cir. 2000). However, the Supreme Court stressed that this test is not an insurmountable hurdle for inmates raising Eighth Amendment claims:

> [A]n Eighth Amendment claimant need not show that a prison official acted or failed to act believing that harm actually would befall an inmate; it is enough that the official acted or failed to act despite his knowledge of a substantial risk of serious harm . . . . Whether a prison official had the requisite knowledge of a substantial risk is a question of fact subject to demonstration in the usual ways, including inference from circumstantial evidence . . . and a factfinder may conclude that a prison official knew of a substantial risk from the very fact that the risk was obvious.

*Farmer,* 511 U.S. at 842.

The Seventh Circuit has held that a medical need is "serious" where it has either "been diagnosed by a physician as mandating treatment" or where the need is so obvious that even a lay person would easily recognize the necessity for a doctor's attention." *Gutierrez v. Peters,* 111 F.3d 1364, 1373 (7th Cir. 1997). *See also Laaman v. Helgemoe*, 437 F. Supp. 269, 311 (D. N.H. 1977); *Mahan v. Plymouth Cnty. House of Corr.*, 64 F.3d 14, 18 (1st Cir. 1995); *Monmouth Cnty. Corr. Inst. Inmates v. Lanzaro,* 834 F.2d 326, 347 (3d Cir. 1987), *cert. denied*, 486 U.S. 1006; *Sheldon v. Penzley*, 49 F.3d 1312, 1316 (8th Cir. 1995); *Riddle v. Mondragon*, 83 F.3d 1197, 1202 (10th Cir. 1996); *Hill v. DeKalb Regional Youth Detention Ctr.*, 40 F.3d 1176, 1186 (8th Cir. 1994).

The Seventh Circuit considers the following to be indications of a serious medical need: (1) where failure to treat the condition could "result in further significant injury or the unnecessary and wanton infliction of pain"; (2) "[e]xistence of an injury that a reasonable doctor or patient would find important and worthy of comment or treatment"; (3) "presence of a medical condition that significantly affects an individual's daily activities"; or (4) "the existence of chronic and substantial

pain." *Gutierrez v. Peters,* 111 F.3d 1364, 1373 (7th Cir. 1997).

Plaintiff alleges that the injury to his hand caused him chronic pain, and that he was unable to use it as the injury progressed. Plaintiff further claims that the outside doctor who treated him found that his injury was worthy of a splint and pain medication. These facts taken together indicate that Plaintiff was suffering from a serious injury which required medical attention.

The inquiry does not stop there. The standard for deliberate indifference in the denial or delay of medical care also requires evidence of a defendant's actual knowledge of, or reckless disregard for, a substantial risk of harm. *See Chavez v. Cady*, 207 F.3d 901, 906 (7th Cir. 2000) (officers were on notice of seriousness of condition of prisoner with ruptured appendix because he "did his part to let the officers know he was suffering"). The Circuit also recognizes that a defendant's inadvertent error, negligence or even ordinary malpractice is insufficient to rise to the level of an Eighth Amendment constitutional violation. *See Duckworth v. Ahmad*, 532 F.3d 675, 679 (7th Cir. 2008); *Ciarpaglini v. Saini*, 352 F.3d 328, 331 (7th Cir. 2003) (courts will not take sides in disagreements with medical personnel's judgments or techniques). However, a plaintiff inmate need not prove that a defendant intended the harm that ultimately transpired or believed the harm would occur. *Walker v. Benjamin*, 293 F.3d 1030, 1037 (7th Cir. 2002) (discussing *Haley v. Gross*, 86 F.3d 630, 641 (7th Cir. 1996)).

### a. Defendant Neal

Plaintiff claims that, after he injured his hand and face, he was treated by Defendant Neal. He alleges that while Defendant Neal examined the injury to his hand, he did so while Plaintiff's hands were still cuffed. Plaintiff claims that because of this, Defendant Neal was not able to perform a thorough examination, and therefore did not provide Plaintiff with the treatment he needed.

As discussed above, Plaintiff was suffering from a serious medical need, namely his injured hand. Although Plaintiff made Defendant Neal aware of the pain he was in and his need for treatment, Defendant Neal gave Plaintiff cream for a cut on his face, and did nothing more to treat the injury to his hand. Plaintiff alleges that at the least, Defendant Neal should have provided Plaintiff with medication when he informed him of the pain he was in. It is clear from this information that Plaintiff made Defendant Neal aware of his serious medical need, and that Defendant Neal failed to treat the injury. What is not clear is why. If Defendant Neal failed to treat the injury deliberately, despite recognizing the need, then this failure amounts to a claim for deliberate indifference. However, if Defendant Neal failed to treat the injury out of negligence, then the failure to treat was not deliberate, and there is no constitutional claim. This claim will proceed against Defendant Neal so that the Court may make an informed decision as to which of these scenarios is most accurate.

### b. Defendants Shelby, Woodside, and Doty

Plaintiff alleges that he separately made Defendants Shelby, Woodside, and Doty aware that he had a serious medical need, and that each Defendant failed to insure that Plaintiff received treatment. Specifically, after Plaintiff's hand became swollen and continued to cause pain, he alerted first Defendant Shelby, then Woodside, then Doty. Each of these Defendants came to the cell, saw the injury, and ultimately walked away without insuring that Plaintiff receive care.

Much like the *Chavez v. Cady*, 207 F.3d 901, 906 (7th Cir. 2000) case, Plaintiff made Defendants Shelby, Woodside, and Doty aware of his injury and the pain caused by that injury. In *Chavez*, the court found that the inmate's statements, similar to those made by Plaintiff here, put the Defendants on notice that he had a serious medical condition that required care. Here too, Plaintiff

put Defendants Shelby, Woodside, and Doty on notice that his hand required care, physically showing them the injury. The fact that each of these Defendants in turn walked away from Plaintiff without either insuring that medical attention was coming, or taking Plaintiff to the health care unit themselves, seems less like error on their parts and more like a deliberate choice to allow Plaintiff to suffer. For this reason, this claim against Defendants Shelby, Woodside, and Doty will proceed.

### c. Defendants Puckett and Issacs

Plaintiff claims that Defendant Puckett, a nurse making rounds, stopped at Plaintiff's cell and inspected his injury. After being told that he was in pain, Defendant Puckett provided Plaintiff with Ibuprofen. When Plaintiff informed Defendant Puckett that he couldn't take Ibuprofen, she responded that she did not have an alternative to give him, and left him with the Ibuprofen.

After Plaintiff had been seen by a doctor and prescribed a pain medication, on several occasions Defendant Issacs issued Plaintiff Tylenol instead of the medication prescribed, despite Plaintiff's complaints. Plaintiff further asked for new dressing for his splint, but Defendant Issacs ignored this request.

In both of these instances, it is clear that Plaintiff received treatment from Defendants Puckett and Issacs, though it was not the treatment he would have desired, or even the best possible treatment for his injury. Nevertheless, a mere disagreement with a medical professional's chosen course of an inmate's medical treatment does not amount to deliberate indifference under the Eighth Amendment. *See Ciarpaglini v. Saini*, 352 F.3d 328, 331 (7th Cir. 2003); *Garvin v. Armstrong*, 236 F.3d 896, 898 (7th Cir. 2001) (Courts will not takes sides in disagreements about medical personnel's judgments or techniques); *Snipes v. DeTella*, 95 F.3d 586, 591 (7th Cir. 1996). The Eighth Amendment does not give prisoners entitlement to "demand specific care" or "the best care

possible," but only requires "reasonable measures to meet a substantial risk of serious harm." *Forbes v. Edgar*, 112 F.3d 262, 267 (7th Cir. 1997). Further, a difference of opinion between medical professionals concerning the treatment of an inmate will not support a claim for deliberate indifference. *Norfleet v. Webster*, 439 F.3d 392, 396 (7th Cir. 2006); *see also Garvin v. Armstrong*, 236 F.3d 896, 898 (7th Cir. 2001).

Plaintiff received care from both of these Defendants; Defendant Puckett provided the pain medication Ibuprofen, and Defendant Issacs provided the pain medication Tylenol. Although Plaintiff argued with both Defendants that he required a different medication, it is clear that these Defendants took reasonable steps to treat Plaintiff's injury. Although Plaintiff's outside doctor prescribed a different medication, Defendant Issacs clearly felt that Tylenol was an appropriate form of treatment, and as stated above, this Defendant will not be punished because of this difference of opinion. *See Norfleet*, 439 at 396. Because Plaintiff received care, although not the care that he desired or the treatment that he was initially prescribed, the fact that he received some treatment from these Defendants defeats his claim for deliberate indifference. This claim against Defendants Puckett and Issacs will be dismissed with prejudice.

### d. Defendant Alvis

Plaintiff claims that he made Defendant Alvis, the intake official at Pinckneyville, aware that he had been issued a low-bunk permit while at Big Muddy, and that he would be requiring a similar permit for use while at Pinckneyville. Defendant Alvis denied this request, though it is not clear from the complaint why this request was denied at this stage. Plaintiff mentions the low-bunk permit in the same section of his complaint that he mentions the pain medication he was receiving at Big Muddy, so the Court assumes that this low-bunk permit was issued by a doctor at Big Muddy for the

injury to Plaintiff's hand.

After being seen by medical personnel in the prison, Plaintiff was eventually issued a low-bunk permit. However, he alleges that due to Defendant Alvis's initial denial, the time he had to wait for the permit exacerbated his injury. It is not clear from the complaint whether Defendant Alvis was aware that Plaintiff needed the permit because his hand was injured, so that his denial might evidence a deliberate desire to allow Plaintiff to suffer. It is equally possible that Defendant Alvis denied the permit based on some prison policy that required that he refuse to honor a permit from another prison without first insuring that the inmate be seen by a medical professional. The record currently before the Court is not clear on this issue, and thus this claim against Defendant Alvis will be allowed to proceed.

### e. Defendant Knope

Plaintiff alleges that Defendant Knope performed an intake medical screening on Plaintiff when he arrived at Pinckneyville, and found that there was no need for medication or a low-bunk permit denoted in his chart. Thus, Defendant Knope refused to grant Plaintiff's requests for this treatment. The Court assumes that at this stage, Plaintiff's injury was still a serious injury that required medical attention. Defendant Knope provided that attention during her examination, but ultimately determined that he did not require treatment. Plaintiff claims that Defendant Knope made this determination based on the lack of evidence of prior treatment in his chart. This indicated that Plaintiff Knope made a decision on the evidence before him, not based on a desire to cause Plaintiff harm. Although Plaintiff Knope perhaps should have ordered either pain medication or a low-bunk permit, or even perhaps both, his failure in this instance is at most malpractice or negligence, which the Seventh Circuit has clearly stated is not a constitutional violation. *See Duckworth v. Ahmad*, 532

F.3d 675, 679 (7th Cir. 2008); *Ciarpaglini v. Saini*, 352 F.3d 328, 331 (7th Cir. 2003). For this reason, this claim against Defendant Knope is dismissed with prejudice.

### f. Defendant Davis

Plaintiff claims that Defendant Davis is the nurse who was responsible for transferring his medical files from Big Muddy to Pinckneyville after he was himself transferred. Plaintiff claims that he learned after Defendant Knope denied his requests for pain medications and a low-bunk permit, that Defendant Davis failed to make notations in his medical files showing that he had been provided these forms of treatment while in Big Muddy. Plaintiff does not state whether Defendant Davis's failure to note his previous treatment was an oversight, or was a deliberate attempt to insure that Plaintiff would be unable to receive this treatment at another institution. As stated above, Plaintiff does not need to prove that Defendant Davis intended the harm that ultimately transpired or believed the harm would occur at this point in the litigation. *See Walker v. Benjamin*, 293 F.3d 1030, 1037 (7th Cir. 2002). It is sufficient that Plaintiff has alleged that Defendant Davis acted, or failed to act, and that it is a possibility that the action or failure can be attributed to a desire to show indifference to Plaintiff's suffering. For this reason, this claim against Defendant Davis survives review and will proceed.

### g. Defendant Obadina

Defendant Obadina treated Plaintiff after he was transferred to Pinckneyville. Plaintiff alleges that Defendant Obadina cancelled Plaintiff's outside referral, and instead provided his own course of treatment. Defendant Obadina issued Plaintiff pain medication on May 26, 2009, and a low-bunk permit on June 2, 2009. After Plaintiff complained that he was still having difficulty using his hand, Defendant Obadina ordered Plaintiff to undergo physical therapy. However, this therapy

was stopped after Plaintiff had been to three sessions.

The fact that Plaintiff received care from Defendant Obadina, in the form of a low-bunk permit, pain medication, and physical therapy, undermines a claim for deliberate indifference. Although Plaintiff wanted the permit and pain medication sooner than Defendant Obadina prescribed, and would have liked to continue physical therapy, the fact remains that Plaintiff received treatment in some form, which cuts against a claim that Defendant Obadina wanted Plaintiff to suffer. As stated above, Plaintiff does not have a right to receive the care of his choice at a time of his choosing, but must simply be provided some care geared toward treating his medical need. *See Forbes v. Edgar*, 112 F.3d 262, 267 (7th Cir. 1997). Plaintiff received treatment for his medical needs from Defendant Obadina, so that this Defendant cannot be said to have been deliberately indifferent to Plaintiff's needs. For this reason, this claim against Defendant Obadina is dismissed with prejudice.

**COUNT 2:    Grievances**

The Constitution does not require prisons to provide grievance procedures. Thus, where a grievance procedure does exist, the failure of a prison official to follow that procedure does not automatically become a constitutional violation. *Maust v. Headley*, 959 F.2d 644, 648 (7th Cir. 1992); *Shango v. Jurich*, 681 F.2d 1091, 1100-01 (7th Cir. 1982). Further, a claim does not arise where an inmate files a grievance, but does not get the result he wanted. *Conyers v. Abitz*, 416 F.3d 580, 586 (7th Cir. 2005). Only where a grievance has been mishandled by an individual directly involved in the grieved conduct is a constitutional claim stated. *See Owens v. Hinsley*, 635 F.3d 950, 953 (7th Cir. 2011); *Grieveson v. Anderson*, 538 F.3d 763, 772 n.3 (7th Cir. 2008); *George v. Smith*, 507 F.3d 605, 609 (7th Cir. 2007); *Antonelli v. Sheahan*, 81 F.3d 1422, 1430 (7th Cir. 1996).

Plaintiff claims that he wrote a number of grievances directed to Defendants C. Miller, Schuler, Evans, and J. Miller concerning the actions and inactions of the Defendants discussed above. On most occasions, Plaintiff did not receive responses from these Defendants. As stated above, simply because Big Muddy and Pinckneyville Correctional Centers had grievance procedures in place does not mean that these Defendants were constitutionally bound to follow them. On no occasion did Plaintiff allege that Defendant C. Miller, Schuler, Evans, J. Miller, or Randle were personally involved in the actions discussed in the grievances filed by Plaintiff.

On the one occasion that Plaintiff discusses a response, he states that Defendant J. Miller denied a grievance on July 24, 2009, and Plaintiff appealed this decision to Defendant Randle, but received no response. As mentioned previously, Plaintiff does not have a constitutional right to have that grievance resolved in his favor, and thus the denial does not itself state a violation. And as, again, neither Defendant J. Miller nor Defendant Randle was accused of being involved in the action being grieved, there is no constitutional violation.

Because prison officials do not have a constitutional duty to follow their own prison grievance procedures, Plaintiff does not have a right to have grievances resolved as he chooses, and because none of the Defendants addressed in this count were alleged to have been personally involved in the actions discussed in the grievances, there has been no constitutional violation. This count is dismissed with prejudice.

**DISPOSITION:**

**IT IS HEREBY ORDERED** that Defendants **PUCKETT, ISSACS, OBADINA, C. MILER, SCHULER, EVANS, J. MILLER,** and **RANDLE** are **DISMISSED** from this action **with prejudice.**

**IT IS FURTHER ORDERED** that the Clerk of Court shall prepare for Defendants **NEAL, SHELBY, WOODSIDE, DOTY, ALVIS** and **DAVIS** (1) Form 5 (Notice of a Lawsuit and Request to Waive Service of a Summons), and (2) Form 6 (Waiver of Service of Summons). The Clerk is **DIRECTED** to mail these forms, a copy of the complaint, and this Memorandum and Order to each Defendant's place of employment as identified by Plaintiff. If a Defendant fails to sign and return the Waiver of Service of Summons (Form 6) to the Clerk within 30 days from the date the forms were sent, the Clerk shall take appropriate steps to effect formal service on that Defendant, and the Court will require that Defendant to pay the full costs of formal service, to the extent authorized by the Federal Rules of Civil Procedure.

**IT IS FURTHER ORDERED** that, with respect to a Defendant who no longer can be found at the work address provided by Plaintiff, the employer shall furnish the Clerk with the Defendant's current work address, or, if not known, the Defendant's last-known address. This information shall be used only for sending the forms as directed above or for formally effecting service. Any documentation of the address shall be retained only by the Clerk. Address information shall not be maintained in the court file or disclosed by the Clerk.

**IT IS FURTHER ORDERED** that Plaintiff shall serve upon Defendants (or upon defense counsel once an appearance is entered), a copy of every pleading or other document submitted for consideration by the Court. Plaintiff shall include with the original paper to be filed a certificate stating the date on which a true and correct copy of the document was served on Defendants or counsel. Any paper received by a district judge or magistrate judge that has not been filed with the Clerk or that fails to include a certificate of service will be disregarded by the Court.

Defendants are **ORDERED** to timely file an appropriate responsive pleading to the

complaint and shall not waive filing a reply pursuant to 42 U.S.C. § 1997e(g).

Pursuant to Local Rule 72.1(a)(2), this action is **REFERRED** to United States Magistrate Judge Frazier for further pre-trial proceedings.

Further, this entire matter is **REFERRED** to United States Magistrate Judge Frazier for disposition, as contemplated by Local Rule 72.2(b)(2) and 28 U.S.C. § 636(c), *should all the parties consent to such a referral.*

Finally, Plaintiff is **ADVISED** that he is under a continuing obligation to keep the Clerk of Court and each opposing party informed of any change in his address; the Court will not independently investigate his whereabouts. This shall be done in writing and not later than **7 days** after a transfer or other change in address occurs. Failure to comply with this order will cause a delay in the transmission of court documents and may result in dismissal of this action for want of prosecution. *See* FED. R. CIV. P. 41(b).

**IT IS SO ORDERED.**

DATED: November 2, 2011

    *s/J. Phil Gilbert*
    **United States District Judge**