IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| CARL ROBERTS, | ) <br> ) <br> ) |
| Plaintiff, | ) <br> ) |
| vs. | ) Case No.  11-cv-266-JPG-PMF <br> ) <br> ) |
| B. NEAL, et al., | ) <br> ) <br> ) |
| Defendants. | ) |

### REPORT AND RECOMMENDATION

**FRAZIER, Magistrate Judge:**

Before the Court are motions for summary judgment (Doc. Nos. 67, 69. 71).  Plaintiff Carl Roberts is proceeding under § 1983 on Count 1 of his amended complaint, challenging the constitutionality of the conditions of his prison confinement at Big Muddy Correctional Center and Pinckneyville Correctional Center between March and May, 2009.  Specifically, Roberts alleges that he had serious needs for medical treatment of a hand injury and that all defendants knew about his needs and responded with deliberate indifference.  With respect to his confinement at the Big Muddy facility, Roberts alleges that defendant B. Neal issued anti-bacterial cream for a cut on his face but did not provide pain medication for his injured hand.  He alleges that defendant Jarrod Selby instructed him to stop whining and walked away without obtaining any medical attention.  He alleges that defendant Thad Woodside also walked away without summoning medical assistance, while defendant Doty informed

him that the medical unit had been contacted yet no one came to his cell during that shift. Roberts was then transferred to the Pinckneyville facility. He claims that defendant J. Davis failed to correctly note his medical needs in transfer records, and that defendant Alvis interfered with on-going care by denying his request for a low-bunk permit (Doc. Nos. 11, 12).

These motions seek a ruling in favor of defendants Neal, Shelby, Woodside, Doty, Davis and Alvis on their affirmative defense that Roberts failed to exhaust his administrative remedies prior to filing this action on April 4, 2011. Some of the defendants also seek a ruling in their favor on their statute of limitations defense. The motions are opposed by Roberts, who argues that he exhausted all available remedies and filed his claims within the applicable limitations period (Doc. Nos. 82-88).[1]

### I. Failure to Exhaust Administrative Remedies

Count 1 is subject to the Prison Litigation Reform Act, which provides that "no action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a). The Court

---

[1] The parties have submitted all relevant materials, which allow assessment of facts crucial to the exhaustion defense. To the extent credibility assessments are made, the foundation for those assessments is plausibility, congruity, and consistency. In these circumstances, an evidentiary hearing would not be helpful in resolving factual disputes. *See Pavey v Conley*, 544 F.3d 739 (7th Cir. 2008).

of Appeals requires strict compliance with the statute. *Dole v. Chandler*, 438 F.3d 804, 809 (7th Cir. 2006). Exhaustion means the prisoner has abided by the procedures for pursing relief. That is, he must file complaints and appeals "in the place, and at the time, the prison's administrative rules require." *Pozo v. McCaughtry*, 286 F.3d 1022, 1025 (7th Cir. 2002). Because failure to exhaust administrative remedies is an affirmative defense; the defendants bear the burden of proof. *Obriecht v. Raemisch*, 517 F.3d 489, 492 (7th Cir. 2008).

In Illinois, the grievance process usually includes five levels of review. A prisoner first submits his grievance to a counselor. He may then submit a formal grievance to the grievance officer. The warden makes the final decision at the institutional level. A prisoner who is not satisfied by the warden's response may appeal to the Director. Those appeals are handled initially by the administrative review board (ARB). The Director issues the final decision. 20 Ill. Admin. Code § 504.810 et seq. After Roberts was transferred from the Big Muddy facility to the Pinckneyville facility on May 13, 2009, he was required to submit any grievance regarding the medical care provided at the Big Muddy facility directly to the ARB. 20 Ill. Admin. Code § 504.870(a)(4).

During the relevant time period (after Roberts sustained a hand injury on 3/31/2009 hand injury and before he filed this litigation on 4/4/2011), Roberts filed and completed all steps required to process five grievances. The first is dated May 8, 2009, with a final ARB decision on July 14, 2009 (Doc. No. 77-1, pp. 33-35). The second is dated June 2, 2009, with

a final ARB decision on October 27, 2009 (Doc. No. 77-1, pp. 6-9). The third is dated November 6, 2009, with a final ARB decision on February 16, 2010 (Doc. No. 77-1, pp. 36-43). The fourth and fifth are dated March 22, 2010, with a final combined ARB decision on August 4, 2010 (Doc. No. 77, pp. 15-23). When he exhausted these five grievances, Roberts described a variety of concerns without complaining about the particular misconduct forming the basis of his Eight Amendment claims in this case: inadequate medical care from defendants Neal, Shelby, Woodside, and Doty on or about March 31, 2009; transfer of incomplete medical information by defendant Davis on or about May 12, 2009; and interference with a low bunk permit by defendant Alvis on or about May 18, 2009.[2]

The Court has considered Roberts' arguments and materials. Roberts first calls the Court's attention to an April 24, 2009, emergency grievance, which describes insufficient medical care on March 31, 2009. Roberts claims he sent this grievance directly to the warden.[3] When he did not receive a prompt response, he sought assistance from various sources. Assistance was eventually provided by correctional counselor Ms. Hoffard, who instructed Roberts to "file your request now through the ARB" (Doc. No. 11-2, p. 1). While Roberts received Hoffard's instruction on May 15, 2009, he did not submit the April 24,

---

[2] General assertions of displeasure with inadequate care and treatment did not permit administrative assessment of the particular acts alleged (Doc. No. 77, p. 18-19; Doc. No. 77-1, p.9).

[3] For purposes of this motion, it is assumed that the April 24, 2009, grievance was sent to the warden as claimed, although the grievance was not recorded in the grievance log maintained by the grievance committee (Doc. No. 67-2, p. 2).

2009, emergency grievance to the ARB until June 9, 2009.  The ARB received the emergency grievance on June 15, 2009 and later rejected it as untimely filed (Doc. No. 77, pp. 33- 44).[4]  The ARB's rejection of Roberts' April 24, 2009, emergency grievance on procedural grounds is persuasive evidence that the issues raised in the grievance were not exhausted.  *Ford v. Johnson*, 362 F.3d 395, 397-98(7th Cir. 2004).  Roberts seeks to excuse his failure to exhaust by claiming that someone withheld grievance forms at crucial times. First, he reports that he was unable to forward his April 24, 2009, grievance to the ARB in a timely manner because of "continual denial of grievance forms" (Doc. No. 86, p. 5).  He also reports that, on an unspecified day, an unnamed counselor refused to provide him with a grievance form when he wished to complain about conduct attributed to defendant Davis (Doc. No. 83, p. 6-7).

In some circumstances, administrative remedies are not be "available" to a prisoner. For example, a procedure is not available if prison officials interfere or refuse to provide the forms needed to initiate or complete the procedure.  *Dole v. Chandler,* 438 F.3d 804, 809 (7th Cir. 2006); *Dale v. Lappin*, 376 F.3d 652, 656 (7th Cir. 2004).  The "availability" of a remedy is not what appears to be on paper, but whether the process was in reality open for use. *Kaba v. Stepp*, 458 F.3d. 678, 684 (7th Cir. 2006).

---

[4] The pages comprising plaintiff's April 24, 2009, grievance are filed out of order at this location.  The pages can be viewed in proper order at Doc. No. 11-1, pp. 3-10).

The Court may evaluate the availability of the grievance procedure by reviewing the materials submitted. The grievance documents show that the grievance process was actually available for Roberts' use following his transfer to Pinckneyville Correctional Center on May 13, 2009, through April 4, 2011. In particular, two documents (Roberts's June 2, 2009, grievance and his August 26, 2009, declaration) are inconsistent with Roberts' suggestion that he experienced a continual denial of grievance forms after Ms. Hoffard instructed him to submit his emergency grievance to the ARB (Doc. No. 77-1, pp. 8-11). The June 2, 2009, grievance and the August 26, 2009, declaration show that Roberts had prompt access to grievance forms. When he disagreed with a medical document received on June 1, 2009, he was able to prepare and immediately file a grievance the following day. The June 2, 2009, grievance and declaration contradict and discredit Roberts' position that he experienced a continual denial of grievance forms. The Court also discredits as implausible Roberts' suggestion that he was not allowed to use the grievance process to complain about defendant Davis due to a decision made by an unidentified counselor at an unspecified time (Doc. No. 83, p. 7). The credible evidence reveals that Roberts had reasonable access to grievance forms, institutional review, and ARB review of his complaints about the quality of medical care (Doc. No. 77, pp. 15, 23; Doc. No. 77-1, pp. 6-7, 25, 27, 33, 36, 41).[5]

---

[5] The credibility of Roberts' statements may be evaluated at this stage of the proceedings. *See Pavey v. Conley*, 663 F.3d 899, 904 (7th Cir. 2011).

Roberts also suggests that he experienced a substantial delay in gaining access to his medical records. The materials indicate that Roberts authorized payment for some medical copies on September 2, 2009 (Doc. No. 88, p. 2). A significant delay is not substantiated. Even if Roberts experienced some delay in obtaining copies, there is no credible evidence that Roberts was prevented from inspecting records by making a written request to the records office. See 20 Ill. Admin. Code § 107.330(b), (c). Moreover, Roberts was not required to identify Davis by name in order to prepare and submit a grievance. 20 Ill. Admin. Code § 504.810(b)(permitting a description when a name is not known). In short, any delay in providing access to records or copies does not excuse Roberts from meeting his statutory obligation to exhaust his administrative remedies before filing suit against defendant Davis.

Finally, Roberts states that he filed and never received a response to a grievance describing misconduct attributed to defendant Alvis (Doc. No. 85, p. 3). This assertion is not credible for two reasons. First, there is a lack of any supporting documentation (such as a copy of the grievance, an entry in a grievance log, an entry in a counselor activity log, or follow-up correspondence). Also, multiple documents show that grievances describing Roberts' medical concerns were submitted and processed (Doc. No. 77, pp. 15, 23; Doc. No. 77-1, pp. 6-8, 25, 27, 33, 36-37, 41). Defendants Neal, Shelby, Woodside, Doty, Davis and Alvis have satisfied their burden of proof on the exhaustion of administrative remedies defense.

## II.  Statute of Limitations

Due to the finding that Roberts failed to exhaust his administrative remedies prior to filing this litigation, the statute of limitations defense is not addressed.

## III.  Conclusion

IT IS RECOMMENDED that the defendants' motions for summary judgment (Doc. Nos. 67, 69, and 71) be GRANTED as follows.  Plaintiff's Eighth Amendment claims against B. Neal, Jarrod Selby, Thad Woodside, Doty, Alvis, and J. Davis should be dismissed without prejudice for failure to exhaust administrative remedies.  If this recommendation is adopted, no claims will remain for decision.

SUBMITTED:   September 24, 2012   .

S/Philip M. Frazier
**PHILIP M. FRAZIER**
**UNITED STATES MAGISTRATE JUDGE**